IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DANIEL AARON BAXLEY,            )
AIS 264945,                     )
                                )
        Plaintiff,              )
                                )
v.                              )        CASE NO. 2:21-cv-514-RAH-JTA
                                )
OFFICER CUNNINGHAM, et al.,     )
                                )
        Defendants.             )

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

## I.    **INTRODUCTION**

Daniel Baxley, an inmate incarcerated at the Elmore Correctional Facility in Elmore, Alabama, proceeding pro se, files this action under 42 U.S.C. § 1983. He sues Lieutenant William Tate and Correctional Officer Sharon Cunningham alleging they failed to protect him from an inmate assault.[1] Doc. No. 11 at 2–3, 5–10.[2] Baxley requests $300,000 in punitive damages. *Id.* at 4.

Defendants filed an Answer, Special Report, and supporting evidentiary material addressing Baxley's claims for relief. Doc. No. 25. In their report, Defendants deny they acted in violation of Baxley's constitutional rights. After reviewing the Special Report, the Court issued an Order on July 7, 2022, requiring Baxley to respond to the report with

---

[1] This matter is before the Court on Baxley's Amended Complaint. Doc. No. 11.

[2] All documents and attendant page numbers cited herein are those assigned by the Clerk of this Court in the docketing process.

affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. No. 26 at 2. The Order specifically cautioned that the "Court may at any time [after expiration of the time for Baxley to file a response] and without further notice to the parties (1) treat the [Special] Report and any supporting evidentiary materials as a … motion for summary judgment …, and (2) rule on the dispositive motion, in accordance with the law, after considering any response filed in compliance with this Order." *Id.* Pursuant to the July 7, 2022, Order, the Court now treats Defendants' Special Report as a motion for summary judgment and concludes the motion is due to be granted.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant shows there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party … . [A fact] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party moving for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). That responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact. *Id.* at 324. Alternatively, a movant who does not have a trial burden of production can simply assert that the nonmoving party "cannot produce admissible evidence to support the fact." Fed. R. Civ.

P. 56 (c)(1)(B);  *see also* Fed. R. Civ. P. 56 advisory committee's note ("Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials. … [A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact."). Under either scenario, the burden then shifts to the nonmoving party to establish that a genuine dispute of material fact exists as to each element of the underlying claims. *See Celotex Corp.*, 477 U.S. at 324; Fed. R. Civ. P. 56(c)(1)(A).

To establish a genuine dispute of material fact, the nonmoving party must produce such evidence as would be sufficient for a reasonable trier of fact to return a verdict in its favor. *See Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001). When evaluating whether a genuine dispute of material fact exists, the court must view all the evidence in a light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmovant's favor. *See McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see also* Fed. R. Civ. P. 56(a). Nonetheless, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although pro se complaints are entitled to liberal interpretation, a pro se litigant is not relieved from the burden of demonstrating a genuine dispute of material fact. *Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

III.   **FACTS**[3]

By way of overview, Baxley states Defendants violated his constitutional rights when they knowingly placed him in a protective custody cell with two other inmates known to be violent. Doc. No. 11 at 2–3. Despite informing Officer Cunningham he felt threatened by being housed with other inmates, Baxley states he was not moved, and his cellmates jumped on him and broke his jaw. *Id.* at 5–8.

Baxley's claims stem from the following facts, viewed in the light most favorable to Baxley. In late February 2021, Baxley was removed from general population at Staton and placed in one of the facility's hallway cells. Doc. No. 11 at 3, 5; Doc. No. 25-2  at 1. On March 2, 2021, an inmate sharing the cell with Baxley assaulted him. Doc. No. 1 at 3, 5–8; Doc. 25-1 at 1. According to an incident report:

> On March 2, 2021 Correctional Officer David Gnacinski was roving in the health Care Unit at Staton Correctional Facility. At approximately 1:20 p.m., Officer Gnacinski heard a banging noise coming from the Staton Hallway Cell. Officer Gnacinski radioed for assistance. Correctional Officer Sharon Cunningham arrived on the scene. Officer Gnacinski observed inmate Daniel Baxley WM/264945 bed assignment-Staton Hallway Cell (no gang affiliation noted) lying on the floor holding his mouth, and inmate Chez Rice BM/220474 bed assignment-Staton Hallway Cell (no gang affiliation noted) standing against the wall; while inmate Sabastian Buckner BM/306141 E3-17B (Blood) was sleeping on his mat.
>
> At approximately 1:25 p.m., Correctional Lieutenant Derrick Hines arrived to the scene, where Officer Gnacinski notified Lieutenant Hines of the incident. Inmate Baxley alleged that inmates Rice and Buckner jumped on him and his jaw was injured. Lieutenant Hines questioned inmates Buckner

---

[3] The "facts" as set forth herein are merely for purposes of summary judgment and may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994) (citation  omitted) (explaining that "what we state as 'facts' … for purposes of reviewing the rulings on the summary judgment motion [] may not be the actual facts.").

4

and Rice. Inmate Buckner alleged that he was asleep. Inmate Rice said that inmate Baxley was coming down off drugs, swung on him and that's when he hit him in his jaw (See attached statements).

At approximately 1:40 p.m., Wexford Registered Nurse Jennifer Fowler conducted a medical assessment on inmate Baxley(see attached). Wexford License Nurse Jennifer Fowler advised Lieutenant Hines that inmate Baxley needed to be transported by Haynes Ambulance to Baptist South for further medical treatment. At approximately 2:25 p.m., Nurse Fowler conducted a medical assessment on inmate Buckner (see attached). At approximately 2:30 p.m., Nurse Fowler conducted a medical assessment on inmate Rice (see attached). Lieutenant Hines took photographs of inmate Baxley (see attached).

At approximately 2:40 p.m., Haynes Ambulance departed gate #4 while Correctional Officer Gnacinksi provided security in the ambulance and Correctional Officer Preppie Witcher trailed in Staton Transport Van enroute to Baptist South Hospital. [A]t approximately 2:50 pm., Lieutenant Hines notified Correctional Captain Ronzella Howard about the incident. At approximately 2:55 p.m., Lieutenant Hines notified LESD Agent David Gallew of the incident.

Inmates Baxley, Buckner and Rice submitted written statements (see attached). After conducting an investigation Lieutenant Hines determined that inmate Baxley was assaulted by inmate Rice. Disciplinary action is being initiated against inmate Rice for rule violation; Assault-Inmate-on-Inmate-with Injury. At approximately 5:00 p.m., inmate Baxley was admitted into Baptist South Hospital and placed on Kilby Correctional Facility Count. No further action taken at this time.

Doc. No. 25-1 at 1.

In the "statement" section of Baxley's March 2, 2021, body chart, he told medical staff: "The guys in the cell jumped on me." Doc. No. 25-1 at 5. Medical staff noted Baxley was alert and oriented to person, place, and time ("oriented x3"), he had a steady gait, and he had full range of motion in his arms and legs ("FROM x 4 extremities"). *Id.* Medical staff also noted that Baxley had facial contusions and abrasions and bleeding from his

lower gumline which was "split/hang[]." *Id.* Baxley was taken to a free world hospital

where he was admitted for surgical repair of a mandible fracture. Doc. No. 25-4 at 1–17.

## IV.   DISCUSSION[4]

In his Amended Complaint, Baxley alleges Defendants violated his constitutional

rights when,

> [o]n Feb. 26th I was placed in a Protective Custody cell (with two inmates
> who were in there for violent offenses) due to threats being made to me for
> money I owed to people. The warden told Lt. Tate to put me in that cell for
> that night until they could transfer me the next day since there were no other
> cells open. I kept telling Officer Cunningham that I wanted out of that cell
> because I felt threatened. [Officer Cunningham] told me to shut up that I
> wasn't getting out of that cell. The inmates were also yelling across the hall
> telling other inmates they would pay them to beat me up, and Mrs.
> Cunningham was in the hall and could hear them saying this. 2 inmates
> jumped me & broke my jaw.

Doc. No. 11 at 3.

Prior to Baxley's placement in the protective custody cell, Lt. Tate spoke with

Baxley about a phone call Lt. Tate received from Baxley's grandfather regarding threats of

violence against Baxley for debts he owed other inmates. Doc. No. 11 at 5. Baxley

confirmed to Lt. Tate his fear of an inmate assault and went over "the details of who and

---

[4] In accordance with applicable federal law, the Court limits its discussion to the claims identified in the Amended Complaint. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (holding that "[a] plaintiff may not amend his complaint through argument in a brief opposing summary judgment."); *Ganstine v. Sec'y, Fla. Dep't. of Corr.*, 502 F. App'x 905, 909-10 (11th Cir. 2012) (holding that a plaintiff may not amend the complaint at the summary judgment stage by raising a new claim or presenting a new basis for a pending claim); *Chavis v. Clayton Cnty. Sch. Dist.*, 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) (noting that district court did not err in refusing to address a new theory raised during summary judgment because the plaintiff had not properly amended the complaint with respect to such theory).

how much [Baxley] owed." *Id.* Lt. Tate informed the warden—who was present during Lt. Tate's conversation with Baxley—that all the isolation cells were full and there was no place to put him. *Id.* The warden told Lt. Tate to put him in a cell with someone else for the night and transfer him the next day. *Id.* at 6. However, Baxley remained in the same cell—with two other inmates—for 5 days.[5] *Id.*

On March 2, 2021,[6] an inmate across the hallway from Baxley's cell recognized him and "holler[ed] across the hall to the guys in [Baxley's] cell" that he was a "catch out" and owed their "homeboys" money. Doc. No. 11 at 6. Baxley began beating on the cell door for attention and asking to be removed from the cell because he feared his cellmates would jump on him. *Id.* Officer Cunningham told Baxley he could not get out of the cell until Lt. Tate moved him. *Id*. at 6–7. Baxley claims Officer Cunningham then remained in the hallway listening to other inmates incite Baxley's cellmates to jump him while promising them a pack of cigarettes. *Id.* at 7. Baxley's cellmates then cornered him and began hitting him. *Id.* Baxley yelled for help and beat on the cell door until Officer Cunningham opened the door and he crawled out. *Id.* Officer Cunningham placed Baxley in handcuffs and escorted him to the healthcare unit for treatment. *Id.* at 7–8.

---

[5] Baxley states the other inmates in the cell with him were there because one had stabbed another inmate and the other inmate had assaulted a correctional officer. Doc. No. 11 at 6.

[6] Although Baxley's Amended Complaint references "Feb. 2nd" (*see* Doc. No. 11 at 6), there is no dispute the challenged assault occurred on March 2, 2021.

Defendants contend, *inter alia*, that Baxley has not stated a valid claim for relief, Defendants did not violate Baxley's constitutional rights, and Defendants are entitled to official and qualified immunity. *See* Doc. No. 25.

### A.      Sovereign Immunity

Defendants assert that Baxley's Amended Complaint is barred by   Eleventh Amendment immunity to the extent it seeks to recover monetary damages against them in their official capacities.  Doc.  No. 25 at 17–18. Official capacity suits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  As such, a state employee may not be sued in his or her official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the immunity, *see Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 59 (1996).

As for the claims now being asserted by Baxley, it has been recognized that "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (*citing Carr v. City of Florence, Ala*., 916 F.2d 1521, 1525 (11th Cir. 1990)). Accordingly, Defendants are entitled to sovereign immunity as to all claims seeking monetary damages against them in their official capacities.  *See, e.g., Selensky v. Alabama*, 619 F. App'x 846, 849 (11th Cir. 2015) ("[T]he Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]."); *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277  (11th Cir. 1998) (holding that state officials in their official capacities are protected under the Eleventh Amendment from suits for damages); *Edwards*

*v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity).

### B.    Qualified Immunity

To the extent Baxley sues Defendants in their individual capacities, they argue they are entitled to qualified immunity. Doc. No. 25 at 16–17. Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if the underlying conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is not merely a defense against liability but immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009) (citation and internal quotation marks omitted).

To receive qualified immunity, a defendant first must prove that he or she was acting within the scope of discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). There is no dispute that Defendants were acting within the course and scope of their discretionary authority when the challenged conduct occurred. The burden therefore shifts to Baxley to present evidence that Defendants are not entitled to qualified immunity. *See, e.g., Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

For an official to lose qualified immunity, Baxley must show both that that the defendant committed a constitutional violation and that the constitutional right the

defendant violated was "clearly established." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010) (citation omitted); *see also Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. ... In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citations and internal quotation marks omitted) (alteration in original); *see also Corbitt v. Vickers*, 929 F.3d 1304, 1311-12 (11th Cir. 2019). The Court may analyze the elements "in whatever order is deemed most appropriate for the case." *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (citing *Pearson*, 555 U.S. at 241-42).

### C.    Deliberate Indifference

#### i.    Standard of Review

"[A] prison official's duty under the Eighth Amendment is to ensure reasonable safety, … a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994) (citations and internal quotation marks omitted); *see also Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986) (explaining that "it is well settled that a prison inmate has a constitutional right to be protected … from physical assault by other inmates."). Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's safety when the official knows the inmate faces "a substantial risk of serious harm" and with such knowledge disregards the risk by failing to take reasonable measures to abate it.  *Farmer*,

511 U.S. at 828.  A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Cottone*, 326 F.3d at 1358.

"It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834; *Bowen v. Warden, Baldwin State Prison*, 826 F.3d 1312, 1320 (11th Cir. 2016). The Eleventh Circuit has consistently "stress[ed] that a prison custodian is not the guarantor of a prisoner's safety." *Purcell ex rel. Est. of Morgan v. Toombs Cnty., Ga.*, 400 F.3d 1313 (11th Cir. 2005) (citations and internal quotation marks omitted). The duty to protect inmates from one another is not absolute "because the Eighth Amendment addresses only punishment. Whether an injury inflicted by fellow prisoners . . . is punishment depends on the mental state of those who cause or fail to prevent it. The requisite mental state for prison officials is intent, or its functional equivalent, described as deliberate indifference[.]"  *King v. Fairman*, 997 F.2d 259, 261 (7th Cir. 1993) (quotation marks and citations omitted). Prison officials only violate the Eighth Amendment duty to protect prisoners from attack when they show "deliberate indifference to a substantial risk of serious harm." *Farmer*, 511 U.S. at 836; *see also Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (citation and internal quotation marks omitted) (brackets in original) (holding that "a prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment if [the official] is deliberately indifferent to a substantial risk of serious harm to an inmate who suffers injury."). "'In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation resulting from cruel and

11

unusual punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to constitutional stature.'" *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (quoting *Wright v. El Paso County Jail*, 642 F.2d 134, 136 (5th Cir. 1981));[7] *Zatler*, 802 F.2d at 400.

To survive summary judgment on an Eighth Amendment failure-to-protect claim, a plaintiff is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) (quoting *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir.1995)). In analyzing such claim, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [prison official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (internal quotation marks and citations omitted). Whether a "strong likelihood" objectively exists cannot be based on hindsight but instead "is a prospective determination of what might happen based upon events that have already occurred." *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015) (holding that "a substantial risk of serious harm[] is evaluated using an objective standard. … The mere fact that an event takes place does not indicate how likely it was to occur.").

The deliberate indifference standard involves an objective and a subjective component. *Caldwell v. Warden, FCI Talladega,* 748 F.3d 1090, 1099 (11th Cir. 2014). In analyzing the first component, an inmate must first show "an objectively substantial risk

---

[7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

of serious harm . . . must exist. … Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh v. Butler Cnty., Ala*., 268 F.3d 1014, 1028–29 (11th Cir. 2001).  As to the subjective element, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (*citing Farmer*, 511 U.S. at 838). "Successful deliberate-indifference claims will generally require some further reason—beyond the plaintiff having informed the defendant officers of the threat—that a prison official could have concluded that a particular threat evidenced a substantial threat, rather than the mere possibility, of serious harm." *Marbury*, 936 F.3d at 1236.

In sum,

[u]nder the objective component, the plaintiff must demonstrate "a substantial risk of serious harm." [*Farmer*, 511 at 834]. . . . Under the subjective component, the plaintiff must prove "the defendants' deliberate indifference" to that risk of harm by making three sub-showings: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Lane* [*v. Philbin*, 835 F.3d 1302, 1308 (11th Cir. 2016)], (quotation omitted). . . . The [relevant] inquiry . . . [is] whether the defendants "disregard[ed]" the risk "by conduct that is more than mere negligence," *id*. (quotation omitted)—or more simply stated, whether they "recklessly disregard[ed] that risk," *Farmer,* 511 U.S. at 836, 114 S.Ct. 1970.

*Swain v. Junior*, 961 F.3d 1276, 1285 (11th Cir. 2020) (footnote omitted).

A defendant's subjective knowledge of the risk must be specific to that defendant. *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008) (explaining that "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference.").

Prison officials must also "possess enough details about a threat to enable them to conclude that it presents a strong likelihood of injury, not a mere possibility." *Marbury*, 936 F.3d 1236  (internal quotation marks and citations omitted). "Merely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Id*. at 1238 (internal quotation marks and citation omitted). Even where a prison official perceives a serious risk of harm to an inmate, the official "may still prevail if he responded reasonably to the risk, even if the harm ultimately was not averted." *Comstock v. McCrary*, 273 F.3d 693, 706 (6th Cir. 2001) (internal quotation marks and citation omitted). *See Farmer*, 511 U.S. at 838 (explaining that "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot … be condemned as the infliction of punishment.").

Last, a plaintiff must show "an affirmative causal connection between the actions taken by a particular person … and the constitutional deprivation." *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir.1993) (internal quotation marks and citations omitted). Thus, a plaintiff must show a "necessary causal link between [a defendant's] failure to act reasonably and the plaintiff's injury." *Marbury*, 936 F.3d at 1233 (internal quotation marks and citation omitted).

### ii. Failure to Protect

Defendants deny they acted with deliberate indifference to Baxley's safety, and assert they are entitled to qualified immunity. Defendants' evidence includes Defendants' affidavits and other prison and medical records.[8]

In his affidavit, Lt. Tate acknowledges receiving a call on February 25, 2021, from a member of Baxley's family concerned for his safety in general population at Staton. Doc. No. 25-2 at 1. Lt. Tate called Baxley to the shift office after receiving the phone call and Baxley informed Lt. Tate he could not live in general population because of drug debts he owed to other inmates. *Id.* Per the instructions of the warden, Lt. Tate moved Baxley to one of Staton's hallway cells located inside the facility's healthcare unit area. *Id.* Lt. Tate states the hallway cells, also known as temporary holding cells, are not considered protective custody cells nor does Staton have any protective custody cells. *Id.* at 1–2. Further, Lt. Tate states that inmates who cannot live in general population at the facility are placed in the hallway cells, but inmates pending classification for closed custody or who are classified as close custody cannot be housed in these cells. *Id.* at 2.

Lt. Tate denies telling Baxley he would be in "that cell for that night until they could transfer [Baxley] the next day." Doc. No. 25-2 at 2. Further, Lt. Tate testifies that he never

---

[8] Defendants have provided copies of prison records and Baxley's medical records but have not submitted a certificate of authenticity from a records custodian or other qualified witness. Nonetheless, Baxley does not challenged the authenticity of the records, hence they are treated as authentic. *See O'Connor v. Carnahan*, No. 3:09CV224/WS/EMT, 2015 WL 6405976, at *5 (N.D. Fla. Sept. 21, 2015) (ruling that prison records' authenticity could not reasonably be challenged under Fed. R. Evid. 902(11) or Fed. R. Evid. 803(6)), *report and recommendation adopted*, 2015 WL 6182680 (N.D. Fla. Oct. 21, 2015).

told Baxley how long he would be in the hallway cell, he was not informed how long Baxley would be in the cell, and he had no responsibility for moving Baxley from the hallway cell or effectuating his transfer to another facility as inmate transfers are the responsibility of classification officials and the Alabama Department of Corrections' Central Office. *Id.*

When Lt. Tate put Baxley in the hallway cell, inmate Chez Rice was already there having been processed into the cell on February 25, 2021, for making threats against correctional officers who had confiscated his cell phone. Doc. No. 25-2 at 2. Lt. Tate states he received no written or verbal communication from Baxley about his placement in the cell with inmate Rice. *Id.* On February 28, 2021, inmate Sebastian Buckner was placed in the cell with Baxley and inmate Rice for fighting with a weapon. *Id.* Lt. Tate states Baxley gave no written or verbal communication regarding any issues with inmate Buckner and testifies that never did Baxley inform him of feeling threatened or fearful for his safety about being in the same cell with inmates Rice and Buckner. *Id.* Finally, Lt. Tate testifies he clocked in at Staton on March 2, 2021, at 1:20 p.m. to prepare for his shift which began at 2:00 p.m. and did not report to the healthcare unit until after the challenged incident had occurred. *Id.* at 2–3.

On March 2, 2021, Officer Cunningham was assigned as a Rover for Staton's healthcare unit which involves escorting inmates to and from the infirmary for doctor and

dentist appointments.[9] Doc. No. 25-3 at 1.  Officer Cunningham denies telling Baxley to shut up and that he would not get out of the cell until he was moved. *Id.* at 2. Officer Cunningham recalls Baxley requesting to see a doctor and she responded by telling him to be quiet and that she would take him to see a doctor after she completed her schedule of appointments for inmates brought in or escorted to the healthcare unit. *Id.*

Officer Cunningham denies any knowledge about any inmate in another one of the hallway cells recognizing Baxley and "hollering across the hall" to Baxley's cellmates that he was a "catch out" and owed their "homeboys" money. Doc. No. 25-3 at 3. Because her duties require her to be in and out of the hallway where Baxley was located, Officer Cunningham denies remaining on the hallway listening to inmates talk and denies hearing any inmate encouraging other prisoners to jump on Baxley. *Id.* at 2. Additionally,  Officer Cunningham states the hallway cells are not directly across from one another making it difficult for inmates to see and recognize other inmates in these cells  *Id.* at 3. Moreover, Officer Cunningham attests that the area where the hallway cells is located is loud with inmates talking over each other and yelling at officers and inmates arriving for appointments. *Id.*

Finally, Officer Cunningham testifies:

I never heard Baxley yelling for help. It was Officer Gnacinski who radioed for assistance after he overheard a banging noise coming from inside the Staton Hallway cell where Baxley was assigned. I arrived on the scene in response to Officer Gnacinski's call for assistance. Upon seeing Baxley on his cell floor Officer Gnacinski notified Lt. Hines.

---

[9] Staton's healthcare unit, in addition to providing medical and dental services to inmates housed at Staton, also provides these services to inmates housed at the Elmore Correctional Facility and the Frank Lee Community Work Release Center. Doc. No. 25-3 at 1.

…

Baxley claims that he beat on his cell door to get an officer's attention and that he told me that he, Baxley[,] wanted to get out of the cell because he allegedly felt threatened and felt like the inmate[s] in his cell were going to jump him. I have no knowledge of this. Inmates beat on their cell door a lot. At no point did I hear Baxley say that he wanted out of his cell because he felt threatened. I never heard Baxley say as he claims that he felt threatened and/or that they were going to jump on him.

*Id.* at 2–3.

In his sworn response to Defendants' dispositive motion, Baxley confirms that on the day of the challenged incident he spoke to Officer Cunningham "earlier in the day" asking to see the doctor. Doc. No. 27 at 3. Later, when inmates started yelling about the reason for Baxley's placement in the hallway cell, Baxley states he started beating his head on the cell door. *Id.* When Officer Cunningham came to the cell, he told her he was having problems with his cellmates and "needed out of the cell." *Id.* Officer Cunningham told Baxley it was not up to her to move him—rather, because Lt. Tate assigned Baxley to the cell, Lt. Tate would have to be the officer who moved him. *Id.* at 3–4. Right after this encounter, Officer Cunningham returned with sack lunches and Baxley again told her he was not getting along with his cellmates and needed to be removed from the cell. *Id.* at 4. Baxley argues Officer Cunningham should have then "pulled him to the side in private instead of asking what [his] problem was in front of [his cellmates]" which would be considered snitching. *Id.* at 4–5. Baxley explains, however that he was escorted from his cell several times during the day to use the infirmary bathroom because the hallway cells lacked toilets. *Id.* at 5.

Baxley also claims that Officer's Cunningham's testimony denying that he told her he wanted to be removed from the hallway is false and that inmate Rice's written statement submitted as part of the prison's institutional incident report (Doc. No. 25-1 at 3) supports this assertion. Doc. No. 27 at 2–3. Even if Rice's statement could be considered as evidence on summary judgment,[10] it does not identify the correctional officer to whom Baxley conveyed that information. *Id.*; *see also* Doc. No. 25-1 at 3. And even assuming Rice had identified Officer Cunningham as the correctional officer to whom Baxley conveyed the information, the court still could not consider the statement at this stage because it is hearsay that Officer Cunningham refuted in a sworn statement. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (holding that hearsay cannot be considered at the summary judgment stage where the declarant has given sworn testimony contradicting the hearsay statement).

Finally, Baxley contends that the inmate population at Staton is not very big, most guys are affiliated with different groups, lots of drugs are sold so people become targets for extortion, black inmates usually target white inmates and "when they don't pay on time they get assaulted" which is common, and "all inmates and staff know what goes on." Doc. No. 27 at 8. For these reasons, Baxley argues that Lt. Tate, as a veteran correctional official, "knew of a history of widespread abuse pertaining to similar circumstances in [Baxley's]

---

[10] *See* Fed. R. Evid. 801(c) (defining "hearsay" as an out-of-court statement offered to prove the truth of the matter asserted in the statement); Fed. R. Civ. P. 56(c)(4) (precluding the court from considering inadmissible evidence presented in an affidavit). In general, a court may not consider hearsay in deciding a motion for summary judgment.

complaint," and "knew the danger [Baxley] was in even being in the cell with only 2 inmates" because "most likely they were close to the people [Baxley] owed." *Id.* at 9.

Here, the Court finds the evidence fails to demonstrate that Defendants knew Baxley was at risk of serious harm from an assault by one of his cellmates. Baxley presents no evidence that, despite what appears to have been multiple opportunities either before or on the day of the incident, he specifically explained to Defendants or any other prison official, his concerns regarding the nature of any problem or issue he was having with his cellmates or why he believed either was a threat to him. Indeed, the undisputed evidence shows that Baxley was housed with inmates Rice and Buckner for several days before the challenged incident during which he did not inform Defendants or other correctional officials of any concerns he had for his safety or identify any prior incidents with his cellmates or any other inmate. Nor has any evidence been presented that Baxley made repeated complaints about either of his cellmates during the five to seven days he remained housed with them and, at most, told Officer Cunningham on the day of the incident that he felt threatened by being in the cell with other inmates. Additionally, there is no evidence that the inmates Baxley shared the cell with had a history of violence, that before the March 2, 2021, assault they engaged in any disputes or altercations with Baxley, or that their classification status prohibited their placement in a hallway cell. Although Officer Cunningham admits to being in and out of the hallway where Baxley was housed, Baxley's contention that the hallway area is small, and it is impossible not to hear what inmates are saying is speculative and not evidence that Officer Cunningham was subjectively aware of a serious risk to Baxley

from his cellmates. Doc. No. 27 at 6.[11] And that the reason for an inmate's placement in the hallway cell is posted outside the cell doors is likewise not evidence that any defendant knew of a serious risk of harm to Baxley from his cellmates. *Id.*

To the extent Baxley purports to establish a dangerous prison conditions claim by asserting there existed a known risk of general inmate-on-inmate violence at Staton—including drug-related assaults—which constituted a substantial danger to his safety to which Defendants showed deliberation indifference, this theory entitles him to no relief. It is undisputed that in response to Baxley's concerns for his safety in general population, Lt. Tate took steps to have him removed him from his dorm and then, as directed by the Warden, placed him in the cell with, at the time, one other inmate. Doc. No.  25-2 at 2; Doc. No. 27 at 7–8. As explained, Baxley presents no evidence he expressed any concerns or problems to Defendants regarding his placement in the hallway cell before the day of the challenged incident. Nor is there any evidence that placing Baxley in the hallway cell subjected him to a substantial risk of serious harm to which defendants were deliberately indifferent. *Johnson v. Lang*, No. 19-14278, 2022 WL 2734421, at 3 (11th Cir. July 14, 2022) (citing *Purcell ex rel. Estate of Morgan*, 400 F.3d at 1320) (finding that while "[e]xtreme levels of prisoner-on-prisoner violence may create a substantial risk of serious harm … occasional, isolated attacks by one prisoner on another" are insufficient to

---

[11] Plaintiff simply cannot satisfy his burden at summary judgment with speculation. *See Kernel Recs. Oy v. Mosley*, 694 F.3d 1294, 1301 (11th Cir. 2012) ("Although all justifiable inferences are to be drawn in favor of the nonmoving party," *Baldwin County v. Purcell Corp.,* 971 F.2d 1558, 1563–64 (11th Cir. 1992) (quotation omitted), "inferences based upon speculation are not reasonable," *Marshall v. City of Cape Coral,* 797 F.2d 1555, 1559 (11th Cir. 1986)).

establish this element."). Although Baxley speculates that Officer Cunningham heard other inmates encourage his cellmates to assault him, he offers no other reason to support the conclusion that his report to her on the day of the incident of feeling threatened is evidence of a substantial risk of serious harm of which Officer Cunningham was aware nor is it evidence that Officer Cunningham had any reason to believe he would be attacked by his assailant. *See e.g.*, *Berg v. Kincheloe*, 794 F.2d 457, 461 (9th Cir. 1986) (citing *Whitley v. Albers*, 475 U.S. 312, 321–22 (1986); *Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979); *Pell v. Procunier*, 417 U.S. 817, 827 (1974)) (observing that "[i]n deciding how to protect a prisoner, officials may face a number of choices, each posing potential dangers to the prisoner and others. Choosing the optimal 'prophylactic or preventive measures' to prevent violence and maintain safety is difficult and not readily susceptible to judicial evaluation."). Instead, Baxley's general statement of feeling threatened is "precisely th[e] type of vague statement that conveys nothing about the nature of the anticipated risk" and, as a result, does "not rise to the level of deliberate indifference to a substantial risk." *Marbury*, 936 F.3d at 1237.

Even had Baxley satisfied the objective component of his deliberate indifference claim, he fails to establish the subjective component because he has not shown that any Defendant subjectively knew of a risk of harm to him posed by either or both of his cellmates, or any inmate, before the altercation made the basis of this Complaint. *Caldwell*, 748 F.3d at 1099-1100 (internal quotation marks and citation omitted) (explaining a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."); *see also*

*McBride v. Rivers*, 170 F. App'x 648, 655 (11th Cir. 2006) (holding that district court properly granted summary judgment to the defendants as plaintiff "failed to show that the defendants had subjective knowledge of a risk of serious harm" because plaintiff merely advised he "had problems" with fellow inmate, was generally "in fear for [his] life," and didn't want to be "put [ ] in the cell with [fellow inmate]."); *Chatham v. Adcock*, 334 F. App'x 281, 293–94 (11th Cir. 2009) (holding that plaintiff was entitled to no relief where he failed to identify "any specific 'serious threat' from [fellow inmate], which he then reported to [the defendants]."). A correctional officer responsible for an inmate's safety cannot be liable for a risk of which he is unaware. *Farmer*, 511 U.S. at 837 (explaining that "a prison official cannot be found liable … unless the official knows of and disregards an excessive risk to inmate health or safety[.]").

In this case, Baxley simply presents no evidence that any Defendant knew he was at risk of being attacked by his cellmates nor does he present direct facts – as opposed to speculations and conclusions – that Defendants had any knowledge or information of a threat to him from his cellmates or any other inmate from which they could infer that a substantial risk of harm existed to him before the assault. *Carter*, 352 F.3d at 1349, 1350 (explaining that "there must be much more than mere awareness of [a] ... generally problematic nature [of another inmate].... [A] generalized awareness of risk ... does not satisfy the subjective awareness requirement."); *see also Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996) (observing that "threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm."). Hence, lacking is any evidence Defendants knew specific facts from which an inference could be

drawn that a substantial risk of harm existed to Baxley, that Defendants actually drew this inference, and, thereafter, ignored the known risk. Baxley has thus not presented facts sufficient to create a genuine dispute regarding Defendants' "actual knowledge" of a substantial risk of harm. *Marbury*, 936 F.3d at 1236. Even if Defendants were negligent in carrying out some of their duties, mere negligence cannot support a finding of deliberate indifference. *See Farmer*, 511 U.S. at 835; *Brown*, 894 F.2d at 1537.

Because Baxley has not demonstrated that Defendants actually knew that a substantial risk of serious harm existed, he has not satisfied the subjective element of his Eighth Amendment claim. *See Curry v. Crist*, 226 F.3d 974, 979 (8th Cir. 2000) (affirming summary judgment where a prisoner was injured during a surprise attack by another inmate). Since the record does not show that the incident between Baxley and his cellmate occurred due to any deliberate indifference or reckless disregard by Defendants, they are entitled to qualified immunity and summary judgment is due to be granted in their favor on this claim. *See Celotex Corp.*, 477 U.S. at 322.

### D. Supervisory Claim

Finally, if Baxley believes Lt. Tate is liable for the actions or omissions of a subordinate based on a theory of respondeat superior, he is entitled to no relief. "The standard by which a supervisor is held liable in [his or] her individual capacity for the actions of a subordinate is extremely rigorous." *Christmas v. Harris Cnty., Georgia*, 51 F.4th 1348, 1355 (11th Cir. 2022) (internal quotation marks and citation omitted). "[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone*, 326 F.3d

at 1360 (citation omitted); *Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1396-97 (11th Cir. 1994). As explained by the United States Supreme Court:

> … Government officials may not be held liable for the unconstitutional conduct of their subordinates [or co-workers] under the theory of *respondeat superior* [or vicarious liability] … A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties. Because vicarious liability is inapplicable to … § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

*Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (internal quotation marks, citation, and parentheses omitted).

Liability could attach to a supervisory official only if they "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [their] actions … and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360; *see also Iqbal*, 556 U.S. at 677 (finding that "[a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). It is undisputed that Lt. Tate was not working at the time of the challenged assault. Absent personal participation, Lt. Tate may only be held liable if his actions bear a causal relationship to the purported violation of Baxley's constitutional rights. To establish a sufficient causal connection without direct participation, a plaintiff must present sufficient evidence of either "a history of widespread abuse [that] put[] [a defendant] on notice of the need to correct the alleged deprivation, and [she or] he fail[ed] to do so" or "a … custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or ... facts [that] support an inference that the supervisor directed the subordinates to act unlawfully or knew

that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal quotation marks and citations omitted).

Baxley does not claim that Lt. Tate personally directed any subordinate officer to act unlawfully or that he knew they would do so and did not stop them. Rather, Baxley claims Lt. Tate had notice of wide-spread abuse because (1) "being a DOC official as long as he has," he knew the danger [Baxley] was in even being in the cell with only 2 inmates; (2) he knew of a history of wide-spread abuse regarding circumstances like Baxley's but failed to correct it; and (3) he sees similar incidents daily because the prison system has a major problem with inmates being assaulted over drug debts. Doc. No. 27 at 9–10. However, "[t]he deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Christmas*, 51 F.4th at 1355 (citation omitted). Further, to provide that a policy or custom caused a constitutional harm, "a plaintiff must point to multiple incidents, or multiple reports of prior misconduct by a particular employee[.] … A single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several [subordinates]." *Piazza v. Jefferson Cnty., Alabama*, 923 F.3d 947, 957 (11th Cir. 2019) (internal quotation marks and citations omitted).

After careful review of the pleadings and evidentiary materials, the Court finds that Baxley fails to make the requisite showing. Baxley's conclusory allegations offered to support Lt. Tate's alleged knowledge of wide-spread abuse are insufficient. There is simply no record evidence that Lt. Tate had notice of the alleged wide-spread abuse in the face of

which he did not take corrective action. Also absent is any evidence that shows the challenged action occurred pursuant to any custom or policy by Lt. Tate and liability under the custom or policy standard is likewise not justified. Defendant Lt. Tate is therefore entitled to qualified immunity on Baxley's claim against him based on a theory of respondeat superior or vicarious liability and Defendants' motion for summary judgment on this claim is due to be granted.

## V.   <u>CONCLUSION</u>

For the above-stated reasons, the Magistrate Judge hereby RECOMMENDS as follows:

1.      Defendants' Special Report (Doc. No. 25) be CONSTRUED as a Motion for Summary Judgment.

2.      The Motion for Summary Judgment (Doc. No. 25) be GRANTED in favor of Defendants on all claims.

3.      This case be DISMISSED with prejudice.

Further, it is ORDERED that by **July 10, 2024**, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered by the Court. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the

Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. *Resol. Tr. Corp., v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11TH CIR. R. 3-1.

DONE this 25th day of June, 2024.


_____
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE